SETH M. CARTER, administrator, *vs.* MARK LOWELL and others.

Androscoggin.    Opinion July 30, 1884.

*Wills.  Legacy.*

By her last will and testament a testatrix gave all her property of every name and nature (except a watch) to twenty-five of her relatives, naming them,— a sister, two brothers and twenty-two nephews and nieces. And she first declared that it should be divided among them equally. But by a subsequent clause she said: "Excepting, also, it is my will that the several shares of my property to my nephews and nieces named, shall be in the same proportion, by right of representation, as if all my brothers and sisters were living at my decease, and I had given my property to all my brothers and sisters and nephews and nieces named, each one to have the same share as the other." The testatrix had seven brothers and sisters in all — three living and four dead. *Held,* that in the distribution of the estate, it should be divided into twenty-nine shares; that each of the twenty-five legatees named should have one of these shares, and that the four remaining shares be distributed among the children of the four deceased brothers and sisters of the testatrix, *per stirpes.*

ON REPORT.

Bill in equity by the administrator, with the will annexed, of the estate of Betsey L. Bearce, late of Auburn, to obtain a construction of the following item of her will:

"Item 1. I give, bequeath, and devise unto Mark Lowell, Daniel Lowell and Vesta Burbank, children of my deceased brother, James Lowell; to Mark Lowell, my brother, John A. Lowell, Hubbard Lowell, Benjamin P. Lowell and Lizzie Irish, his children; to William L. Bonney, Tristam Bonney, Henry Bonney, and George Bonney, children of my sister deceased, Polly Bonney; to Charles Lowell, Helen Whitney, Margie

Etheridge, Henry Lowell, and Louisa Lowell, children of my deceased brother, Stephen Lowell; to William Lowell, my brother, Mrs. Carrie Perkins, S. Arthur Lowell and W. G. Lowell, his children; to Miriam Shaw, my sister, Huldiannah Cushman and Edward Shaw, her children; to Russell Howard, the only child of my deceased sister Margie Howard, all my property of every name and nature, real, personal and mixed, of which I may die seized and possessed, to be divided equally between all said persons, brothers, sister, nephews and nieces, excepting the property I shall name hereafter in my will, and excepting, also, that it is my will that the several shares of my property to my nephews and nieces named shall be in the same proportion, by right of representation as if all my brothers and sisters were living at my decease, and I had given my property to all my brothers and sisters and nephews and nieces named, each one to have the same share as the other."

"Item 2. I give and bequeath to the nephew of my deceased husband, Samuel R. Bearce, the gold watch and chain left by my late husband."

*J. M. Libby,* for Russell Howard, one of the defendants.

*Frye, Cotton and White,* for the other defendants.

WALTON, J. By her last will and testament, Betsey L. Bearce gives all her property of every name and nature (except a watch) to twenty-five of her relatives — a sister, two brothers, and twenty-two nephews and nieces. And she first declares that it shall be divided among them equally. But by a subsequent clause she says: "It is my will that the several shares of my property to my nephews and nieces named shall be in the same proportion by right of representation as if all my brothers and sisters were living at my decease, and I had given my property to all my brothers and sisters and nephews and nieces named, each one to have the same share as the other." It appears by the will that the testatrix had seven brothers and sisters in all — three living and four dead. If the latter were not dead, and were added to the legatees, the whole number of the legatees

would be twenty-nine; and if the estate were then divided equally among them, the share of each would be one twenty-ninth. The two provisions of the will are thus seen to be in conflict. Under the first clause each of the twenty-five legatees named is entitled to one twenty-fifth of the estate; under the second, to only one twenty-ninth, leaving, apparently, four twenty-ninths undisposed of. And here arises the difficulty. What shall be done with these four shares? Shall they be divided among all of the legatees equally, or shall they go to the children of the four deceased brothers and sisters, "by right of representation?" We can not resist the conviction that the latter was the intention of the testatrix. It seems to have occurred to her that under the first provision of the will the children whose parents were living were likely to fare better than the children whose parents were dead; that they were getting an equal share at the beginning, and might by inheritance get their parents' share also; and that it was to avoid this apparent inequality that the second clause was added. It seems to have been her desire that to this extent the seven branches of her family should all fare alike.

It is therefore the opinion of the court that in the distribution of the estate, it should be divided into twenty-nine shares; that each of the twenty-five legatees named should have one of these shares, and that the four remaining shares be distributed among the children of the four deceased brothers and sisters of the testatrix, *per stirpes.*

And as this is a suit brought by the administrator in good faith to obtain a construction of the will upon a point in relation to which doubts might well exist, we think the costs of the suit should be paid out of the estate.

*Decree accordingly.*

Peters, C. J., Danforth, Virgin and Libbey, JJ., concurred.